I agree that there was a Batson violation in this case, but I respectfully dissent as to the majority's failure to redress this violation.
According to the majority, "a Batson violation cannot be considered harmless error." 618 So.2d at 711. The majority suggests that properly, it cannot decide this case on a determination that the Batson violation was harmless error. In my view, however, this is what the majority has done.
The majority's analysis falls squarely under the harmless error doctrine. Basically what the majority says is that when a Batson "error" is found to cause no meaningful prejudice, it is, in effect, irrelevant for purposes of review. The majority states:
 "If Lifeline and Carr were entitled to a judgment as a matter of law, then there was no role for the jury to play as fact-finder and the coincidence that the defendants' use of their peremptory challenges in jury selection violated Batson should not yield a different result."
618 So.2d at 711.
Note how precisely this proposition comports with the harmless error doctrine. "Harmless error" is "[a]n error which is . . . merely academic and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case." Black's Law Dictionary
(5th ed. 1979). "Where a final judgment in a matter grants to the appellant all the rights and relief he could possibly receive in [an] action, there is no point in considering possible error in the case, and any error . . . becomes harmless." 5 Am.Jur.2d "Appeal and Error," § 776 (1962). See Rule 45, Ala.R.App.P.[4]
In stating that it does not apply the harmless error doctrine in this case, the majority says that "[i]n this case, there are two errors, both of which are reversible," and, therefore, it concludes, it "need not treat a Batson violation as harmless error in order to reach the [directed verdict] issue raised in the cross-appeal." 618 So.2d at 711. Thus, the majority implies that it reaches its result — denying relief to K.S. althoughit states that the trial court erred with regard to juryselection — without implicating the harmless error doctrine.
In my view, this explanation begs the question; it is unresponsive as to how the majority concludes that its saying that the Batson violation is not "prejudicial" or is simply "coincidental," and, therefore, is "irrelevant," is not calling it "harmless error."
The majority opinion suggests a concern about a practical undesirability of remanding this case. It states that the verdict in *Page 716 
favor of the defendants was amply supported by the record, and concludes that the violation of K.S.'s Fourteenth Amendment rights "should not yield a different result." 618 So.2d at 711.
A Batson violation is not rendered acceptable because the facts of the case can be seen to disfavor the litigant invoking his or her Batson rights.[5] Factually strong cases could always overcome a party's constitutional rights, thereby effectively denying the rights, which is precisely what has happened here.
Moreover, we have impliedly recognized this concern before, in a case that the majority now appears to contradict. InPerry v. State, 368 So.2d 305 (Ala.Cr.App. 1978), the Alabama Court of Criminal Appeals reviewed a robbery conviction. The accused had not taken the stand at trial. The prosecution hadnot commented on this fact at trial. Also, the accused's guilt had been established by evidence that was not materially in conflict. Nevertheless, on appeal the accused argued, in pertinent part, that the trial court reversibly erred in refusing to give a requested charge on the legal effect of his exercise of the constitutional right not to testify. The Court of Criminal Appeals held that, given the lack of any "comment [at trial] on the appellant's failure to testify" and "the fact that the evidence without material conflict disclosed that theappellant and his cohorts robbed the bank in question," there was no injury despite the trial court's error in refusing the instruction, i.e., that the error was "harmless error." Thus, held the Court of Criminal Appeals, the accused was not entitled to a new trial. 368 So.2d at 308-09 (Emphasis added.)
This Court, in an 8-0 decision (Justice Bloodworth not sitting), reversed the judgment of the Court of Criminal Appeals and remanded the case, although, as the Court of Criminal Appeals had said, the evidence, "without material conflict," established the accused's guilt. Ex parte Perry,368 So.2d 310 (Ala. 1979).
Writing for the Court, Justice Jones ably reasoned that the harmless error doctrine (which questions "whether such error has affected the substantial rights of the accused," 368 So.2d at 312) could not be properly applied to deny the accused redress. To treat the matter as harmless error effectively denies the accused his constitutional right against self-incrimination, according to Justice Jones, who called the applicability of the harmless error doctrine, where such a right is in issue, "tantamount to the denial of the fundamental right of the accused, as constitutionally . . . mandated."Id. at 312.
This case presents precisely the same type of situation as that in Perry. If these cases differ materially, it is that this is a much more compelling situation than that in Perry.
The trial judge in this case stated:
 "Now, my experience for ten years of sitting up here has shown me that blacks do have a tendency to give more money than do whites in cases, generally. So as a result of that, I can see if I were a defendant's lawyer I would probably want to strike them because they do tend to give more money than do white jurors in cases, and I don't think that means that they're discriminating against them."
The trial court concluded that no Batson violation had occurred. The majority says that one did occur, but that K.S. is not entitled to redress, a holding that has the same practical effect as the trial court's action.
The majority discusses whether a Batson violation has "a prejudicial effect" on the presentation of a party's case. This is a discounted inquiry, as Ex parte Perry makes clear.[6]
Moreover, Batson indicates *Page 717 
a substantial and widespread injury any time a Batson violation is permitted: "The harm from discriminatory jury selection extends beyond that inflicted on the [party] and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice." Batson v.Kentucky, 476 U.S. 79, 87, 106 S.Ct. 1712, 1718, 90 L.Ed.2d 69
(1986).
Finally, I disagree with the implication of the majority's statement that "[t]o decide [other than as the majority holds] would make compliance with Batson the tail that wags the dog; that is, Batson would become superior to aspects of procedural and substantive law in the State of Alabama that are not related to juries and their composition." 618 So.2d at 712.
I fear that this apparent misunderstanding of the superiority of constitutional rights fatally clouds the majority's analysis of this case. Batson and the line of United States Supreme Court cases based on it, e.g., Edmondson v. Leesville ConcreteCo., ___ U.S. ___, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991);Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411
(1991), as interpretations by the highest court in the land, of the supreme law of the land, are superior to any procedural or substantive law of the State of Alabama. U.S. v. Const. Art. VI;[7] see Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60
(1803).
[4] Rule 45 provides:
 "No judgment may be reversed or set aside, nor new trial granted . . . on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."
[5] Furthermore, if the majority is concerned with the undesirability of remanding for a new trial, how does this concern justify leaving K.S. wholly without redress?
[6] I strongly disagree with the majority's statement, in footnote two of its opinion, that in Perry the violation of the accused's constitutional rights was "presumed to have a prejudical effect on the role of the jury as factfinder." 368 So.2d at 312. I respectfully point out that nowhere in thePerry opinion did the Court refer to any such purported "presumption." Perry does not so hold and, in fact, expressly stated that any harmless error or "substantial injury" question had "no field of operation" in the Court's review.
[7] "This Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding."